Pearson, J.
 

 The bill is filed to obtain a construction of the will of David Baker. The plaintiffs insist that the plaintiff, Catharine, is entitled to one fifth part of the whole estate, real and personal. The defendant insists that she was entitled only to her support and the privi
 
 *554
 
 lege of living with her children in the mansion house during her life or widowhood. The testator left four small children and his widow, the plaintiff, Catharine, who intermarried with the plaintiff, Armstrong, some two years after his death. The will, providing for the payment of his debts, is in the following words :
 

 “Second : It is my will and desire that my whole estate, both real and personal, except such as may be necessary to dispose of to pay my just debts, to remain together as joint stock of my beloved wife and children, and my farm continued under the management of my executor for their support and education; and that each one, if a son, receive his distributive share when he arrives at the age of twenty one years, and, if a daughter, when she arrives at the same age or marries ; always reserving my house lot as a residence for my infant children and my beloved wife, during her natural life or widowhood.”
 

 He, then appoints his father, Moses Baker, his executor and guardian of his children. Ten days after the execution of his will, he makes a codicil, in which he directs his executor, “in conjunction with my beloved wife, to sell such of the property as can be best spared and with the proceeds buy a trusty negro fellow, who is skilful in the management of a farm and in repairing implements of husbandry.”
 

 One of the most difficult duties of the Court is, to ascertain the proper construction of a will. They are usually written by persons, not learned in the law, and not ac„ customed to putting their thoughts iti writing. Most testators are not aware of the rule of the law, that the will must speak for itself and that the Courts can derive no aid from collateral circumstances. Hence,, although they may have a clear intention, they put in writing an ill defined and indefinite intimation of it, and. suppose, that as all their friends know the intention, there will be no difficulty.
 

 
 *555
 
 It is a safe presumption in general, that every testator intends to dispose of his whole estate, and not to die intestate as to any part. Partial intestacy is in most cases the result of accidental omission,
 
 (casus omissus)
 

 So it is a safe presumption in general, as every man knows that his wife is allowed to dissent from his will, that testators intend to make such a provision for their wives, as will reasonably satisfy them ; for, otherwise, by a dissent, the whole will be deranged and his particular bequests cannot be carried into effect. This presumption is aided, except where the contrary appears on the face of the will, by the consideration that testators have just as much affection for their wives as for their children, and feel as much bound to provide for them.
 

 These two general presumptions are in favor of the construction contended for by the plaintiffs, and will turn the scales in favor of the wife ; if they are equally balanced.
 

 The will admits of but two constructions; one, that' contended for by the plaintiffs ; and the other, that the tes tator did not dispose of his estate, except so far as to a particular use of it by his wife and children during her life or widowhood ; for if there are no words of gift to the wife, then there are none to the children. And they are left to take by descent and under the statute of distributions, except so far as the particular manner in which it is to be used for a limited time is directed by the will, — ■ We are to take, then, one of two constructions as the intention of the testator. The wife is to share equally with the children in the whole estate real as well as personal; or the testator meant to leave his estate undisposed of, except as to the manner in which it was to be used for a limited time. If instead of the words, “to
 
 remain
 
 together as joint
 
 stock
 
 of my beloved wife and children ; and each one to receive his
 
 distributive share,
 
 if a son, when he arrives at the age of twenty-one,” &c., he had used the
 
 *556
 
 words
 
 “to be
 
 (he joint
 
 property
 
 of my beloved wife and children ; and each child as they come of age to receive his
 
 rateable
 
 share,” there could have been no doubt. Such we think was his meaning. He gave his whole estate real and personal to his wife and children; and expressed his wish that it should be kept together for their mutual interest, as long as, in the course of things, it was practica? ble to do so. When a child came of age, he was to have his share,
 
 “always
 
 reserving” from the division, thus made necessary, the “house lot” as a residence for his children, who were still infants, and his wife who was still his widow. But vrhen their mutual interest no longer required that the property should be kept together as a joint stock, which would be, when all of his children ar* rived at full age or married, or when his wife died or ceased to be his widow; then his intention was, that there should be a division among them as of
 
 joint
 
 property.— The words, “distributive share,” could not have been used in reference to the statute of distributions, as in case of intestacy, for it includes real as well as personal estate, and the testator, for that reason, thought it necessary to reserve out of the division, which was to be made as the children came of age,
 
 his house lot.
 

 What can be said in favor of the other construction I Did he mean to leave his property undisposed of, except so far as he directed the manner in which it was to be used for a limited time f If so, it is contrary to what most men do, who make a will at all. Did he mean to force his wife to dissent, by leaving nothing but a bare support and the privilege of living in the house and lot with her children ? This is to suppose him to be unaffected by influences, which operate upon most men.— Whereas from the general tone of his will it would seem, that his wife and children were equally dear to him, and he felt under an obligation to provide for them all. He thought she-was fit to remain in the house and takq care
 
 *557
 
 of their children, while they were infants ; and he shows confidence in her judgment by directing in the codicil, that she is to be consulted as to what property should be sold to buy the negro man. All this is opposed to the idea, that he intended to leave her destitute, and that when one child came of age, he was to take a fourth of all, but the “house lotand another a fourth ; and so when the last of the four took a fourth, nothing was to be left to her, although still alive and his widow, but the empty -walls of the “house lot.”
 

 There is not the slightest intimation, that he intended a forfeiture of her right to a share of his estate, by .a second marriage. The only allusion to her ceasing to be his widow, is confined to the clause reserving the “house lot” out of the division, as the children may severally come of age, and there it is made for the obvious reason, that when she died or married, the purpose for making the reservation would be at an end.
 

 It must be declared to be the opinion of the Court, that under the will of the testator, the plaintiff, Catharine, is entitled to one fifth part of the whole estate, both real and personal. There must be a decree for an account and for a division. The costs to be paid out of the estate.
 

 Per Curiam.
 

 Decree accordingly.